UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Reggie Griffin,                                             Civil No. 06-1157 (JMR/FLN)

      Petitioner,

      v.                                                         **REPORT AND RECOMMENDATION**

State of Minnesota,

      Respondent.

_____

*Pro Se* Plaintiff.
Donna J. Wolfson, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for writ of habeas corpus [#6] pursuant to 28 U.S.C. § 2254. This Court issued an Order directing Respondent to show cause why Petitioner's Writ should not be granted [#8]. In its Answer, Respondent moved this Court to deny Petitioner's Application for a Writ of Habeas Corpus [#9 and #10]. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons that follow, this Court recommends that the Petition be dismissed with prejudice.

## I. BACKGROUND

Petitioner Reggie Griffin, a prisoner of the State of Minnesota, is currently incarcerated at the Minnesota Correctional Facility in Moose Lake ("MCF-Moose Lake"). Petitioner was convicted of Criminal Sexual Conduct in the First Degree and two counts of Kidnapping on March 17, 2003, by the Hennepin County District Court. He is currently serving a 144 month sentence imposed for the Criminal Sexual Conduct conviction and a 33 month sentence for the Kidnapping conviction.

He is serving these sentences concurrently.

According to the evidence produced at Petitioner's trial, the incident upon which Petitioner was convicted occurred on December 14 and December 15, 2002. In its opinion denying Petitioner's appeal, the Minnesota Court of Appeals described the incident as follows:

> Late in the evening of December 14, 2002, V.B. was experiencing severe high blood sugar as a result of her diabetes. To obtain urgent care, V.B. took the bus to a hospital in downtown Minneapolis. When V.B. disembarked, she saw Griffin near the bus stop smoking a cigarette and asked him to share one.
>
> According to V.B., Griffin gave her a cigarette but then grabbed her by the throat. Griffin told V.B. "[W]alk or I will kill you," and they walked approximately two blocks to a semi-sheltered area. Over the course of the night and early morning of December 15, 2002, Griffin struck V.B. several times and engaged in vaginal and anal intercourse. Griffin refused to let V.B. leave or seek medical treatment. At dawn, they walked back toward the hospital; Griffin boarded a bus, and V.B. sought medical attention. The sexual assault and kidnapping spanned approximately seven hours.

*State v. Griffin*, 2004 WL 1925829, *1 (Minn. App. 2004), *rev. denied* (Minn. Nov. 23, 2004).

At sentencing, the State moved for an upward durational departure from the sentencing guidelines which the district court granted. The district court found that the crime involved particular cruelty because of the cold conditions, the vulnerability of the victim, and the length of the confinement, and used these findings to support the upward durational departure. The district court imposed a sentence of 144 months for the first degree Criminal Sexual Conduct conviction and 21 months for the Kidnapping conviction, to be served consecutively. Griffin appealed the convictions to the Minnesota Court of Appeals.

In that appeal, Petitioner raised the following issues: (1) whether the district court improperly admitted for impeachment purposes his 1994 conviction for first-degree assault; (2) whether the

prosecutor committed several instances of misconduct the trial; and (3) whether the district court abused its discretion by imposing consecutive sentences resulting in an upward durational departure. The Court of Appeals affirmed Petitioner's convictions. *State v. Griffin*, No. A03-963, 2004 WL 1925829 (Minn. App. Aug. 31, 2004), *rev. denied* (Minn. Nov. 23, 2004). However, the Court of Appeals determined that a new United States Supreme Court decision, *Blakely v. Washington*, 542 U.S. 296 (2004), necessitated remanding his sentence for reconsideration in light of newly articulated constitutional standards. On reconsideration, the district court sentenced Petitioner to 144 months and 33 months for the two convictions, to be served concurrently. The Minnesota Supreme Court denied the petition for further review on November 23, 2004.

Petitioner then filed the instant Petition seeking federal habeas corpus review. Petitioner raises the following issues: (1) whether the district court improperly admitted his 1994 first-degree assault conviction and (2) whether the cumulative effect of prosecutorial misconduct in this case deprived Petitioner of his Sixth Amendment right to a fair trial by an impartial jury and his Fourteenth Amendment right to a fair trial and due process.[1] (Am. Pet. at 3-9.) He does not raise any issue related to his sentencing. Pursuant to Rule 5(b) of the rules governing §2254 cases in United States District Courts, in its Answer, the State of Minnesota states that none of Petitioner's claims are barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity or a

---

[1] Petitioner alleges the following instances of prosecutorial misconduct: (1) that, during closing argument, the prosecutor alluded to a charge that was not charged in the complaint; (2) that the prosecutor demeaned Petitioner's consent defense during closing argument; (3) that the prosecutor expressed her personal opinion in the closing argument about Petitioner's credibility; (4) that the prosecutor elicited perjured testimony from the victim; and (5) that the prosecutor referred in closing argument to evidence not admitted, told the jury to put themselves in the victim's shoes and when she diverted the jury's attention to a general fear of crime in Minneapolis.

statute of limitations.[2]  (Docket # 9.)  For the reasons discussed below, the Court recommends that the Petition be dismissed with prejudice.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners.  The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts.  The Court held that:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'  Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] However, as noted below, the State was mistaken, as this Court has identified three issues upon which Petitioner failed to exhaust his state court remedies.

*Id*. at 412-13 (quoting 28 U.S.C. § 2254 (d)(1)).  The Court further explained the "unreasonable application" clause:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id*. 529 U.S. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record.  When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence."  *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

A federal district court is not allowed to conduct its own *de novo* review of a habeas petitioner's constitutional claims.  Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts.  Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

Federal habeas relief is only available to a person in custody in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States.") As a threshold matter, a petitioner must present a federal question in his petition for relief.

A state prisoner must normally exhaust all available state judicial remedies before a federal court will entertain a petition for habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The state courts must have the first opportunity to hear the claim and "pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation omitted). Exhaustion of state remedies is governed by whether the petitioner has presented a fair opportunity to the state court to rule on the claims presented in the federal petition. *See Picard v. Connor*, 404 U.S. 270, 276-77 (1971). A federal claim is fairly presented to the state courts if "the applicant for a writ of habeas corpus refer[s] to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." *Kelly v. Trickey*, 844 F.2d 557, 558 (8th Cir. 1988) (quoting *Martin v. Solem*, 801 F.2d 324, 330 (8th Cir. 1986)). The exhaustion requirement is not satisfied unless the habeas petitioner has raised all of his claims at every available level of the state court appeal process. *O'Sullivan*, 526 U.S. at 845; *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993) ("A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim.") The United States Supreme Court concluded that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

### III. LEGAL ANALYSIS

### A.     Petitioner Cannot Establish That The Prosecutor's Conduct Prejudicially Affected His Rights So As To Deprive Petitioner of a Fair Trial.

Federal intervention for prosecutorial misconduct is appropriate only when (1) the conduct was improper, and (2) the conduct prejudicially affected the defendant's rights so as to deprive the defendant of a fair judicial proceeding. *United States v. Stands*, 105 F.3d 1565, 1577 (8th Cir.1997). Therefore, the relevant constitutional question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly*, 416 U.S. at 642.) To determine whether the prosecutor's conduct deprived a petitioner of a fair trial, the court must view the statement or conduct within the context of the entire trial. *United States v. Young*, 470 U.S. 1, 11 (1985).

Petitioner identifies numerous instances of alleged prosecutorial misconduct. The Court's analysis will address each individual instance in turn, along with their cumulative effect.

### 1.     The Prosecutor Referred to a Charge in Her Closing Argument That was Not a Part of the Complaint in this Case.

During her closing argument, the prosecutor referred to the victim as a "vulnerable adult." The State does not contest this fact. Petitioner argues that the State committed plain error when the prosecutor characterized V.B. as a "vulnerable adult" without any evidence in the record to support such a claim. (Pet. Mem. at 3.) Petitioner argues that, because the prosecutor did not charge him with the specific crime of assaulting a vulnerable adult, as that term is defined in Minn. Stat. § 609.232, subd. 11 (2002), the prosecutor's use of the term "vulnerable adult" to describe V.B. was

improper. *See* Minn. Stat. § 609.232, subd. 11 (2002) (defining the legal term "vulnerable adult").

Petitioner's claim that the prosecutor engaged in improper conduct by describing V.B. as a "vulnerable adult" is meritless. The victim in this case was a 49 year old diabetic who was suffering from a high blood glucose level at the time she encountered Petitioner. In fact, the victim's diabetic condition was so serious that she was on her way to the hospital to seek medical attention for her condition. In addition to suffering from diabetes, V.B. testified that she suffered from bipolar disorder and was in recovery for substance abuse. (Tr. at 130-31; 147-48; 217-22.) She was, as the prosecutor described her, a vulnerable person in the ordinary sense of the term vulnerable.[3]

The Court agrees with the Minnesota Court of Appeals that it was reasonable for the prosecutor to describe the victim as a "vulnerable adult" and that a reasonable jury would have understood that the term "vulnerable adult" was being used in its ordinary, and not its legal, meaning. *See* 2004 WL 1925829 *3 (Minn. App.2004). This is particularly true given the facts about the victim's condition at the time of the assault that were brought out during the trial. There is no evidence that the prosecutor used the term "vulnerable adult" as evidence of a crime against a person defined as a vulnerable adult pursuant to Minnesota Statute Section 609.232 or attempted to suggest to the jury that Petitioner committed an additional but uncharged crime. Thus the Court concludes that it was not improper for the prosecutor to describe the victim as a "vulnerable adult" during her closing argument.

        2.       <u>The Prosecutor Demeaned Petitioner's Consent Defense.</u>

---

[3] The American Heritage Dictionary defines the word "vulnerable" using several different definitions, including "1. Susceptible to physical injury; 2. susceptible to attack . . . " AMERICAN HERITAGE DICTIONARY 1356 (2d College Ed. 1982).

Petitioner argues that, in closing argument, the prosecutor demeaned his defense that the victim consented to the sexual acts when the prosecutor stated the following:

> [Petitioner] needs you to believe . . . that she consented to the sex act. And why? Well, because that's really the only option that the DNA evidence gives him. The DNA evidence proves that there was sperm found in [V.B.], and that that is the defendant's sperm. That's really the only option. . . . The DNA evidence proves that.

*Griffin*, 2004 WL 1925829 at *4. Petitioner alleges that this statement by the prosecutor demeaned his consent defense because the prosecutor argued that, since the DNA evidence identified the sperm found in the victim as Petitioner's, his only option was to argue that V.B. consented to the sex because the DNA evidence did not allow him to deny that he had sex with her.

The DNA evidence at trial established that 99.998 percent of the population was excluded as the source of the DNA in the sperm, and that Petitioner was not excluded as a possible source of the sperm sample. (Mem. in Opp. at 10)(citing Tr. at 296-76.) In her closing argument, the prosecutor highlighted the fact that the DNA evidence produced at trial did not permit Petitioner to argue that he did not have sex with the victim. Since the DNA evidence prevented Petitioner from arguing that he did not have sex with the victim, the prosecutor noted that, based on the facts in evidence at trial, the only other option Petitioner had was to argue that the victim engaged in consensual sex with Petitioner.

This argument did not "demean" Petitioner's consent defense. Rather, the prosecutor simply addressed Petitioner's theory of the case- that V.B. consented to have sex with Petitioner in exchange for crack- and noted that the DNA evidence required Defendant to acknowledge that he had sex with V.B. The prosecutor used this evidence to question the veracity of Petitioner's defense, to attempt to discredit Petitioner's claim that V.B. consented to have sex with him. As noted by the Minnesota Court of Appeals, the prosecutor did not "resort to the sort of insults that improperly

disparage the defense" and, therefore, Petitioner's claim of prosecutorial misconduct based on the prosecutor's DNA argument failed. *Griffin*, 2004 WL 1925829 *4. Similarly, this Court recommends that Petitioner's claim of prosecutorial misconduct based on the prosecutor's DNA argument be dismissed, because the prosecutor's DNA argument was not improper.

> 3. The Prosecutor Improperly Diverted the Jury's Attention to the Fear of Crime in Minneapolis and Improperly Elicited Sympathy for the Victim in her Closing Argument When She Told the Jury to Put Themselves in the Victim's Shoes.

Petitioner points to two statements by the prosecutor in her closing argument to support his claim that the prosecutor improperly diverted the jury's attention to the fear of crime in Minneapolis and improperly elicited sympathy for the victim. During her closing argument the prosecutor stated "it should not be either that we live in a world where a sick woman can't get on a city bus and go downtown to get medical treatment at 11:30 at night without having to fear of being raped and kidnapped. . . . But it is that kind of world, and that's what happened here." *Griffin*, 2004 WL 1925829 * 4. The Minnesota Court of Appeals concluded that this statement was an instance of misconduct because it was similar enough to statements in other cases in which jurors were asked to consider the impact of the crime on the community rather than whether the state had met its burden of proof. *See Griffin*, 2004 WL 1925829 at *4 (citing *State v. Peterson*, 530 N.W.2d 843, 848 (Minn.App.1995)).

In addition to this statement, the prosecutor made the following statement during her closing argument:

> It was probably also obvious to you that testifying was not particularly easy for [V.B.]. That was a difficult experience. . . . Add to that the stress of having to re-live what was probably the most horrific night of her life. . . . Add to that the fact that she has to do this in front of him, who she hasn't seen since [the incident]. Add to that, the fact that that very morning . . . she had been discharged from the hospital to come

down here and testify.

*Griffin*, 2004 WL 1925829 *5. The Minnesota Court of Appeals concluded that this statement constituted prosecutorial misconduct because it "categorically elicited sympathy for the victim," did not address guilt or innocence, and referred to V.B.'s recent hospital discharge, a fact that was not introduced as evidence at the trial. *Id*. However, the Court of Appeals found that both instances of misconduct were "relatively brief." *Id*. The Court concluded that the misconduct was cured by the court's instructions to the jury not to rely on arguments of counsel as evidence and did not influence the verdict given the strength of the DNA evidence, the victim's testimony and the discovery, by police officers, of the victim's belongings at the scene of the crime. *Id*.

In the present case, because the Court concludes that only the above two statements constitute prosecutorial misconduct, the Court will only examine the cumulative effect of the two improper statements that elicited sympathy for the victim and asked the jury to consider the crime's impact on the community. The Eighth Circuit

> has set forth a two-part test for reversible prosecutorial misconduct: 1) the prosecutor's remarks or conduct must have been improper; and 2) such remarks or conduct must have prejudicially affected defendant's substantial rights so as to deprive him of a fair trial. . . . If this court reaches the second step, the factors we consider are 1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court.

*United States v. Beckman*, 222 F.3d 512, 526 (8th Cir.2000)(citations omitted). The Eighth Circuit further noted that "[t]he critical question, for purposes of review, is whether the argument of which the defendant complains was so offensive as to deprive the defendant of a fair trial." *Id*.

The Court concludes that, while the prosecutor committed two instances of misconduct during her closing argument, no constitutional violation occurred in the present case. Petitioner was

convicted due to the strength of the evidence presented against him at trial, not due to the isolated instances of prosecutorial misconduct that occurred in the closing argument. The evidence presented at the trial consisted of strong DNA evidence, consistent testimony by the victim of the events that occurred, and the discovery by police officers of the victim's belongings at the crime scene. All of this evidence is direct, probative and specific evidence firmly linking Petitioner to the crimes for which he was convicted. In addition, the district court instructed the jury not to rely on the arguments of counsel as evidence and defense counsel partially responded to the prosecutor's improper argument by stating in his closing argument "Do not convict . . . because you feel sympathy or feel bad about [V.B.'s] health problems." *Griffin*, 2004 WL 1925829 *6.

Viewing the prosecutor's improper remarks in the light of the entire trial proceeding, the Court concludes that the arguments that Petitioner complains of were not so offensive as to deprive Petitioner of a fair trial. Therefore, the Court recommends that Petitioner's Petition be dismissed insofar as it attempts to state a claim under the Fourteenth Amendment due process clause based on prosecutorial misconduct.

### B.   Plaintiff's Remaining Grounds for Relief Are Procedurally Barred.

Each claim that Petitioner asserts in his habeas corpus petition was asserted in his brief to the Minnesota Court of Appeals. However, three of the claims Petitioner asserts in his Petition were not asserted in his Petition for Review to the Minnesota Supreme Court. In his Petition for Review to the Minnesota Supreme Court, Petitioner did not argue that the prosecutor expressed her personal opinion regarding the Petitioner's credibility during her closing argument. (*See* Docket #12, Petition for Review to the Minnesota Supreme Court at 7-10) (stating the reasons that the Minnesota Supreme Court should grant review of Petitioner's case.) Similarly, in his Petition for Review to

the Minnesota Supreme Court, Petitioner did not argue that the prosecutor knowingly offered perjured testimony from the victim. (*See* Docket #12, Petition for Review to the Minnesota Supreme Court at 7-10.) Finally, in his Petition for Review to the Minnesota Supreme Court, Petitioner did not argue that it was improper for the district court to admit his 1994 assault conviction for impeachment purposes.[4] (*See* Docket #12, Petition for Review to the Minnesota Supreme Court at 7-10.)

As noted above, the exhaustion requirement is not satisfied unless the habeas petitioner has raised all of his claims at every available level of the state court appellate process. *O'Sullivan*, 526 U.S. at 845; *Ashker*, 5 F.3d at 1179. Petitioner did not raise all of the claims in the present petition to the Minnesota Supreme Court in his Petition for Review. Therefore, the Court concludes that Petitioner has failed to exhaust all of his state court remedies in the present case. As the Petition in this case contains both unexhausted and exhausted claims, the Court concludes that Petitioner has failed to exhaust his claims: (1) that the prosecutor expressed her personal opinion regarding the Petitioner's credibility during her closing argument; (2) that the prosecutor knowingly offered perjured testimony from the victim; and (3) that the district court improperly admitted his 1994 assault conviction for impeachment purposes.

---

[4] The Court has reviewed the record in the present case extensively to determine whether these issues were raised by Petitioner in front of the Minnesota Supreme Court, as the State asserted that none of Petitioner's claims were barred by a failure to exhaust his state court remedies. However, a close inspection of the record requires this Court to conclude that Petitioner did not exhaust his state court remedies with respect to these issues. While Petitioner filed both a *Pro Se* Supplemental Brief and a *Pro Se* Reply Brief with the Minnesota Court of Appeals, the only brief in the record concerning Petitioner's Petition for Review to the Minnesota Supreme Court is the brief filed by Petitioner's court appointed assistant state public defender. It is this brief that fails to address three of the issues raised in the Petition for Habeas Corpus.

As set forth above, Petitioner has failed to exhaust three of his proffered claims. The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merit of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir.1980). Under Minnesota state law, "once a petitioner has directly appealed a conviction, all matters raised in that appeal, and all matters that were known but not raised, 'will not be considered upon a subsequent petition for post-conviction relief.'" *Greer v. State*, 673 N.W.2d 151, 155 (Minn. 2004) (quoting *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn.1976)); *see also McCall v. Benson,* 114 F.3d 754, 757 (8th Cir.1997). There are two exceptions to this general rule:

> First, a postconviction court may hear and consider a claim that was previously known but not raised if the claim is so novel that its legal basis was not reasonably available at the time of the direct appeal . . . Second, even if the claim contained in a petition for postconviction relief was known at the time of direct appeal or its legal basis was reasonably available, we still allow substantive review of the claim when fairness so requires and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal.

*Greer*, 673 N.W.2d at 155 (citations and quotations omitted). Neither one of these exceptions is applicable in the present case.

In his Petition for Review to the Minnesota Supreme Court, Petitioner failed to include the above three arguments. Thus, Petitioner's claims were matters known but not raised. However, these claims were not "so novel that [their] legal basis was not reasonably available at the time of the direct appeal." *Id*. Likewise, substantive review of Petitioner's claims is not permitted because he raised these issues to the Minnesota Court of Appeals but he "deliberately and inexcusably" failed to raise these issues on appeal to the Minnesota Supreme Court. *Id*. Therefore, as these two exceptions do not apply to Petitioner, his failure to present these claims has effectively barred him

from raising them again in a collateral state court action. *Id*. Accordingly, these claims are procedurally defaulted pursuant to Minnesota law, as Petitioner cannot raise these claims in a subsequent petition for postconviction relief.

"When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). As noted by the United State Supreme Court,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner has not argued or demonstrated cause for failing to properly pursue his claims in his appeal to the Minnesota Supreme Court. Nor has he made any contention or showing of actual innocence necessary to invoke the fundamental miscarriage of justice exception. *See McCall v. Benson,* 114 F.3d 754, 758 (8th Cir.1997). Accordingly, federal habeas review of Petitioner's remaining claims is procedurally barred, and this Court cannot review those claims.

## IV.   RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#6] be **DENIED,** and that this action be **DISMISSED WITH PREJUDICE.**

DATED: November 28, 2006          s/ *Franklin L. Noel*
                                  FRANKLIN L. NOEL

United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 15, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.